Mr. Hamilton, when you're ready. May it please the Court. This Court should hold that it has jurisdiction under the Collateral Order Doctrine and that the District Court's order is inconsistent with NDCS's sovereign immunity.   The District Court's order is no different than any other order that partially denies a motion to dismiss based on sovereign immunity. NDCS sought its immediate and unconditional dismissal from the case. It did not receive that. The order is therefore immediately appealable. The merits of the case can be decided on elementary principles of subject matter jurisdiction and the undisputed proposition that NDCS's sovereign immunity applies to this suit. Mr. Jones's brief does not explain how the District Court had subject matter jurisdiction to enter an order against NDCS. He also does not defend the conditional nature of the District Court's order. The District Court was wrong to prolong its jurisdiction over NDCS. Returning to jurisdiction, this Court has jurisdiction for the same reasons it had jurisdiction in the Thomas v. F. A. G. Barings case. This is the case that preceded NRA Missouri DNR. The Missouri Department of Natural Resources was involuntarily joined as a party under Rule 19a of the Federal Rules of Civil Procedure, and there was no claim brought against the department. There was no risk of liability for the department. Nonetheless, this Court entertained an immediate appeal from the denial of the department's motion to dismiss. Do we treat the order as sort of two separate orders here, both for the merits and for jurisdiction? And what I mean by that, is there the refusal to dismiss plus a separate discovery type order? You have to give the names of these officials? No, Your Honor. It really is one order. The District Court's order is – it entered this order because NDCS motioned for dismissal from the case. And it dismisses other defendants without condition, but then the language that discusses NDCS's dismissal says that the agency is going to be dismissed only after it provides this information to Mr. Jones. But my – Mr. Jones does characterize the order as one more like a third-party subpoena and perhaps the appeal from a motion to quash. Even still, this Court's decision in Altell against DeJordi would still permit an immediate appeal from the District Court's order. Although, you know, I'm going to follow up on that. I do think it's probably one order. That's the way I viewed it as well, because it is like literally one order. But DeJordi is a little different because I think the Court in that case, we said, well, it's tribal immunity, not sovereign immunity. And then it went to Great Panty State, tribal immunity is different from sovereign immunity. So does that make it a little bit different, given that on its face, it appears to apply to tribe-type situations only? Well, I mean, it certainly is our position that this is really more of a Thomas case. But DeJordi also does talk a bit about Missouri DNR, and it's – towards the end of that decision, it suggests that maybe for a more burdensome order, the Missouri DNR rule might not apply. And this order really is different from Missouri DNR. The Missouri DNR case just required the production of some privileged log documents. But the way this order is framed, NBCS actually has to do research and investigation and has to identify these DOE defendants. It has to identify the addresses for these DOE defendants and provide that. So the order is different in character from the – No. I get where that's true. I also get where Judge Battalion's coming from. He still has his pending case against the DOE defendants. And, you know, the bottom line really comes down to this, is that, you know, if Marvell Jones was a lawyer and not incarcerated, what he'd do is he would, you know, take a Rule 27 deposition and require a person with knowledge of the records to identify him. Or he would ask the court for leave to file a third-party subpoena against the state. Or he might make a Nebraska Freedom of Information Act request, all of which is at some point going to require your client to provide that information in one form or another. And I get where, you know, most of these DOE defendants are likely inmates who are working for 12 cents an hour or something, and their identification probably is not overly complex. But finding where their current addresses or whereabouts are is something beyond the state's can. And in the end, the state would just likely say, we don't know where they are now, but here's who these people were, right? Is there any reason why, you know, it wouldn't have been, like, more efficient for the Nebraska Department of Corrections to say, here's a list of names and the last known address, just leave us alone? Well, a few points, Your Honor. Mr. Jones does contend that he made a public records request, and that is in the record. NDCS does not – I don't know sort of what happened with that request. I'll note that it's framed a bit differently than a normal public records request and that, again, it doesn't really seek documents as much as it seeks the identification of names and addresses, which is, you know, the public records records laws, of course, exist to make records available to the public. You must keep a list of the employees that you have working, whether they're incarcerated or other employees, right? I mean, never mind. It doesn't really matter because it doesn't get to the legal issues in the case here. It just seemed to me that, you know, the state and the courts are spending a lot of money here for something that might just be just as easy to go along. Well, we think the principle is quite important because, you know, we worry about a situation where state entities can be made defendants and then, despite their sovereign immunity, they can be subject to orders of the court to provide information. You know, this order requires NDCS to provide names and addresses. We don't know what a similar order might look like based on or a future order might look like based on this precedent. And a second point is, Mr. Jones is no ordinary pro se plaintiff. He's a very — I get that. I get that. Sure. You know, I tend to agree with you that the district court can't hold the State hostage in order to, you know, to require discovery. But, but, I do want you to address the fact, you know, or at least distinguish Missouri DNR, which says, let's suppose the district court would have dismissed you from the case and then later did one of the things that Judge Erickson mentioned. I think, even though I'm not a big fan of Missouri DNR, as I've written previously, I think that would be okay under our precedent, correct? Well, it really, I think, would depend on the character of the order. I mean, Missouri DNR is talking about the production of documents. This order is — we construe it more as one requiring research. You know, it's more in the nature of an interrogatory. And, you know, as I indicated to Jordy, I think questions the limits of Missouri DNR. And as is evident from our litigation in the McGehee case, we do question Missouri DNR's continued force. And so we would perhaps challenge a future, you know, third-party subpoena or something. So your argument would be, you know, if the district court decides to do that later, fine. But then we can get the sovereign — we can at least get this initial sovereign immunity thing out of the way and talk about that on the merits. On the merits of the sovereign immunity in Missouri. Yeah. On the merits of the discovery order, whatever that may be, hypothetical order. Right. Right. Because since Missouri DNR, the Fifth Circuit has now weighed in and created a split in the Russell against Jones case. So we do question Missouri DNR's, you know, that rule. But if Jones had managed to name just one individual as a defendant, one of the wardens, one of the assistant wardens, and said, and other unnamed individuals, as long as he got into court, he could then probably force you to disclose the names of all those other unnamed individuals. Could he not? He needs just one name to stay in court, right? Well, the problem still would be that these claims are time-barred. The district court held that the claims are time-barred. So I think that defendant would still end up being dismissed under — that named defendant would be dismissed because the claims are time-barred. Well, assuming they're not time-barred. Assuming that you don't have that type of an issue. If he could get just one name, he could stay in court, right? And then probably force you to disclose all the others. I mean, it's hard for me to speculate about future discovery, but certainly if there was a defendant there, then there would be other options for discovery that don't exist when the named defendants have been dismissed and what's left are do-defendants. Returning to the merits issue, the — we really think this case boils down to a subject matter jurisdiction question. And the district court noted in its order that the department has sovereign immunity. That's page 68 of the appendix. And it noted that State sovereign immunity is a jurisdictional issue. That's page 65 of the appendix. And we think those two premises together require the conclusion that the district court was wrong to extend jurisdiction over NDCS and that the agency was entitled to its immediate and unconditional dismissal from the case. Unless the Court has more questions, I'll reserve time for rebuttal. Seeing none, thank you very much. Thank you. Mr. Eagles. Thank you very much, and may it please the Court. Thad Eagles from WilmerHale, appointed by this Court to argue for Mr. Jones. I'd like to first explain why there is no collateral order jurisdiction here, regardless of the Court's view of the merits. The State argues that this is the denial of State sovereign immunity, and that all such denials are subject to immediate appeal. But that's wrong. Not all denials of State sovereign immunity are immediately appealable. The question is, what are the consequences of the district court's order? The Supreme Court has made clear that only orders that infringe on immunity from litigation itself triggers the collateral order doctrine. If that immunity from litigation itself is not at issue, then there's no appellate jurisdiction. What if the ultimate result is Nebraska says, I don't want to comply with your order? Don't they have to go to litigation then? I mean, they're not going to be dismissed. It's a contingent dismissal, so I don't quite understand your argument. Well, if the State had refused to comply with the order and been held in contempt, it could have appealed that order here. Well, not only that, it could have been taken to litigation, right? I mean, it would have remained under the district court's strict order would remain a defendant in this case, right, because the dismissal is contingent on compliance with the order. I think I'm not entirely sure what would happen if the State had not agreed to comply. I think it is very unlikely that the district court would have ordered, for example, party discovery. But if it did order party discovery or if it had ordered discovery relevant to the claims against the State, then that would involve the State's immunity from litigation itself and from trial. And then that would give rise to appellate jurisdiction if the State had decided to appeal. I don't mean to belabor the point, but if you read the plain language of the district court's order, they don't get dismissed until they comply. I suppose we could speculate and say, well, we're not going to comply. Please dismiss us anyways. But it appears that the district court does not want to do that because then it loses its hold on Nebraska. I am not positive what leverage that really gives. I think the district court was also very clear in its plain language that the motion to dismiss was granted and that the State is entitled to sovereign immunity as to the claims against it. And I think it is very unlikely that the district court would then turn around and order the State to produce a deponent relevant to the dismissed claims against it that it already held aren't viable. And I don't think we have to get into those hypotheticals because if that were to happen, the State could then immediately appeal it because that would involve the State's right to be free from trial, which is the language the Supreme Court uses. And I just want to bring back in Thomas v. F.A.G. Barings, which my friend relied on, and just say that that case also involved the State's right to be free from being forced to litigate to avoid an adverse judgment. There it was an involuntary joinder trying to force an enforcement agency to bring its claims as part of a private class action. But the principle is the same. It was still being forced to litigate against its will to avoid an adverse judgment. So Thomas v. F.A.G. Barings doesn't particularly help the State here. And so just to return to the point that not all denials of State sovereign immunity are immediately appealable, just one example might help. As the Seventh Circuit has recognized, in order denying a motion for judgment as a matter of law at the close of the evidence is not immediately appealable. And that's because it doesn't implicate the State's right to be free from trial. The trial has already happened. All that's left is a decision. And so that's not immediately appealable, even though the State remains listed as a party. And I think that's the same thing here. The consequence of the district court's order here is only that the State will have to produce evidence that it would admittedly have to produce regardless of whether it's a party. Even if it were dismissed, it would still have to produce this information under Missouri DNR. And so I think because it doesn't implicate the State's right to be free from trial, it doesn't force the State to litigate to avoid an adverse judgment, there's no appellate jurisdiction. And that's the same logic. What about contempt, though? You mentioned it, so I just wanted to throw that out. That seems like a form of litigation. Am I wrong about that? It would be a form of litigation. But it is attached to the Federal court's right to order the State to do something. So we're already in a world where the district court has asserted a right or the power, the jurisdiction, to order the State to do something. And if it has that power, then it has the power to hold the State in contempt, and then that gets appealed as well. And that's fairly well established, that contempt against State actors is a path to appellate review. So the Supreme Court's, just to play this logic out as to appellate jurisdiction, several other asserted immunities, the Supreme Court has applied similar logic and said that's not an immunity from trial. The effect of the order is not to force the party asserting the immunity to lose its protection from litigation itself. So that's Van Kauenberga, which involves an asserted immunity from civil service of process while in the United States pursuant to an extradition order. The Supreme Court said we're not even going to decide if that immunity exists because that's not the kind of immunity that gives rise, that implicates immunity from trial. And same with Will v. Halleck, which is, which asserted immunity under the judgment bar of the Federal Tort Claims Act. And so I think the logic of those Supreme Court cases, the logic of the Seventh Circuit's decision about the judgment as a matter of law, squarely applies here. This order doesn't force the State to litigate to avoid an adverse judgment. It just requires the State to provide discovery. And the Supreme Court, this Court, have been clear that those sorts of discovery orders are not immediately appealable. I would just like to flag that my colleague on the other side referred to some of the burdens that it might face if there's precedent States on the books. And I just want to flag that there are many other avenues for district courts to be deferential to States as sovereigns, and that's just part of the normal discovery process in determining what is reasonable and proportional given the needs of the case. States have unique interests. They have unique burdens. And if the district court doesn't take those into account and issues an order that, in the State's view or in actuality, inappropriately burdens the State or is inappropriately intrusive into the State's interests, then there are avenues for the State to get immediate appellate review of that decision, contempt, Section 1292B review, and petition for writ amendamus. The State's only argument as to why contempt is unavailable relies on the United States v. Nixon. And every court that's addressed that similar argument has held that Nixon is essentially limited to its facts, meaning it's limited to the President and maybe a handful of other very senior executive branch officials ordering NDCS to provide the information necessary to serve these individuals is not nearly the same kind of imposition on separation of powers as ordering the President to testify before a grand jury. So on appellate jurisdiction, in short, the order being appealed does not require any State actor to continue litigating to avoid a judgment, unlike in Thomas v. FAG Barings. It just requires the production of information necessary for claims to proceed against individual non-State actor defendants. It's for all practical purposes indistinguishable from a third-party discovery order, and this Court and the Supreme Court have held that those are not appealable, immediately appealable. The Court, therefore, does not have appellate jurisdiction and should dismiss the appeal. Turning to the merits, I'd first like to address subject matter jurisdiction, and I'd like to make two points. First, a finding of sovereign immunity only means there is no jurisdiction over a specific set of claims. The Court can't order further discovery in service of those claims, can't rule on the merits of those claims, but immunity as to those specific claims doesn't disempower the District Court from entering orders relevant to other claims over which it still undisputedly has jurisdiction. And there's no dispute here. I was going to ask, do you think that, I mean, now that we're getting to the merits, it's hard to separate subject matter jurisdiction from the merits here. I mean, I know you want to get into the discovery part of it, but is there any doubt here that Nebraska's entitled to sovereign immunity? Just the real question is, can they immediately appeal it, and how far does it go? Well, we're not challenging at this juncture. I believe Mr. Jones would like to reserve his argument that they are not entitled to sovereign immunity on the merits, so, you know, he has reserved that for a final judgment. Okay. So if they're, we presume, we assume, whatever, that there's sovereign immunity here, the problem I'm having with this is I can't separate the we're going to keep you from the until you turn over these names. In other words, those two things seem to go together. I don't disagree with you that at least under precedent, the District Court could have done one of the things that Judge Erickson mentioned earlier through discovery had the District Court dismissed him from the litigation. So how do we separate those two things? That's the trouble I'm having because it's all one order. Sure. Well, let me give you two answers. One, perhaps overly literal, it is one order, but it has separate paragraphs. There are three paragraphs. The first paragraph requires the production of the information. The second paragraph conditions dismissal on production of that information. And the third dismisses the unnamed parties in their official capacities. So I think it would be, we obviously think there's no appellate jurisdiction. We think the District Court acted within its discretion. If you disagree on those two points, you could still affirm as to paragraph one of those three paragraphs require production of this information and reverse that suggests the dismissal. That's paragraph two of the three paragraphs in the order. So I think that option is readily available to this Court, and I think that would make sense given the District Court's need for discretion to manage its caseload. District Courts have a lot of pro se cases. They need to efficiently move through them, and I think here really the District Court treated the State FOIA request that was attached to the complaint as a third-party subpoena and kind of allowed Mr. Jones, who's pro se and civilly incarcerated, to skip some of the formalities. And I think that's well within the District Court's discretion to do that. So I think an order affirming that portion of the District Court's ruling would be perfectly appropriate. On a more substantive response, I don't quite see how the difference between being the State being a party and the State being a non-party can be dispositive with respect to an order that would be clearly allowed if the State were not a party. So that is to say the State objects to not being dismissed. formally as a party on PACER. But if it were dismissed, the remedy for that error is for the State to be a non-party. And if it's a non-party, then there's no dispute that Missouri DNR would permit exactly this discovery. I think the argument is that it's coercive, though, because you're telling the State they can't be dismissed and could be potentially subject to litigation. I mean, we'd have to speculate as to what would happen. So I take your point that that may not happen. But at the very least, they could be held in contempt, which are all forms of litigation, I think, that sort of infringe on sovereignty to some degree. Whereas if they're not a party, maybe you still have the contempt, I guess. But it just seems like it's different. You do still have the contempt. And I would say the contempt proceedings are not brought by a private party to enforce a claim. So it's just a mechanism of the Federal Court's power to issue an order. And if it doesn't have that power, then the contempt sanctions will be overturned. And that's precisely the reason this path exists. And so just one more example about why I'm not quite sure why it matters that the State remained a party. If there were jurisdictional discovery, for example, if there were plaintiff sues State employees, non-State employees in the same action, and the State says the State employees were functioning as State actors and they're immune and there's jurisdictional discovery as to exactly what they were doing at the relevant time or what have you. In the interim, the plaintiff serves discovery requests on the State, and they're relevant only to the claims against the individual defendants, the non-State actors. I don't think there's any reason, I don't think anyone would argue, that the district court has to wait to order the State to respond to that discovery until the district court's decided whether they are appropriately a party or not a party. If the State seeks dismissal, then it will then have to respond to this discovery. So I'm not sure how the district court's power to order that discovery can turn on and off depending on whether the State is or isn't a party. I think the question is what kind of order is it? And it's an order requiring discovery relevant to claims against third parties and not relevant to claims against the State. I floated this before, but just maybe another way to think about potential resolution that I think might get to some of your concerns, Your Honor, is to think of the district court's decision to, and I, again, do not concede this is error. I think it was perfectly fine in an effort to move a pro-State case along efficiently. But if this Court disagrees and thinks that the paragraph 2 of the district court's order was an error, then I think it was a harmless error, because the only consequence of that error at this point is that the State has to produce information it would have to produce even if the Court hadn't entered that order. The State would still have to produce this information. So if it was error, it was harmless. Alternatively, the Court could affirm as to paragraph 1 and reverse as to paragraph 2. But I think the appropriate outcome here is to hold that there's no appellate jurisdiction because the order below doesn't require the State to litigate to avoid an adverse judgment. If there are no more questions. Seeing none. Thanks very much. Thank you very much for your time. Your rebuttal, Mr. Hamilton. Thank you, Your Honor. Just a few points. Looking at the district court's order, which is page 73 of the record, I'm not sure it can be separated so easily as my friend on the other side describes. Paragraph 2 really incorporates paragraph 1 because it says that the NDCS's dismissal — NDCS will be dismissed as a party after filing its response as set forth in paragraph 1. And in paragraph 1, does — it lays out the language for what NDCS has to provide, but that still is different than a third-party subpoena because the Court entered this order. It included that language as part of disposing of NDCS's motion to dismiss. And it did so in a way that incorporated what Mr. Jones calls a public records request that was attached to his complaint. There is a mechanism under Nebraska law for a State agency to be forced to respond to a public records request that a requester believes it hasn't received an adequate response to. That person can seek mandamus in Nebraska court. They can petition the State attorney general, and the attorney general can enter an order requiring the agency to respond. Finally, I would just point out — But if all that doesn't happen, though, in time, what if the plaintiff ends up getting it? Because we've been pretty hard on Doe defendants in this, talking about it's not a mistake and you've got to plead it a certain amount of time to meet the time bar. And so what happens if the statute of limitations is coming up and literally this is a last-ditch attempt to get those names? Well, I still don't see how that relaxes subject matter jurisdiction or creates an exception to State sovereign immunity. I mean, statutes of limitations have a lot of unfortunate consequences for plaintiffs. And I don't know why someone should be able to get an end run around that by wrongly making an immune party a defendant to a lawsuit. My final point is neither side has cited any order like this, an order that conditions an immune party's dismissal on providing some sort of information to the plaintiff. And that really underscores how unusual the situation is and the dismissal is inconsistent with the agency's sovereign immunity. If there are no further questions, we'd ask this Court to reverse the district court and order the district court to immediately and unconditionally dismiss NDCS from the case. Thank you. Thank you. The matter has been well briefed and well argued. The Court will take the case under advisement and issue an opinion in due course. Thank you very much for your time here today. We'll have a clerk call the next case.